**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| MBALAMINWE MWIMANZI, | |
| *Plaintiff*, | |
| v. | Civil Action No. 25-102 (TJK) |
| DISTRICT OF COLUMBIA et al., | |
| *Defendants*. | |

## <u>MEMORANDUM OPINION</u>

Mbalaminwe Mwimanzi pleaded guilty in the Superior Court of the District of Columbia to violating a civil protection order and was sentenced to 75 days incarceration (suspended) and one year of probation. But eight months later, when his probation was revoked and the sentence of incarceration imposed, Mwimanzi was detained, transported from court to the D.C. Jail, searched and processed for several hours, and then released because he had been credited serving more than the 75 days. Mwimanzi sues the District of Columbia, the U.S. Marshals Service, and the U.S. Department of Justice for his detention and search, which he alleges violated his Fourth and Fifth Amendment rights. Defendants move to dismiss on several grounds. For the reasons explained below, the Court will grant the motion and dismiss the case.

## I.    Background

In May 2023, Mwimanzi pleaded guilty in D.C. Superior Court to violating a civil protection order. ECF No. 27 at 4.[1] The court imposed a suspended sentence of 75 days incarceration,

---

[1] For simplicity's sake, the Court cites the District of Columbia's opposition for the uncontested summary of the relevant Superior Court proceedings. *See* ECF No. 27. The Court takes independent judicial notice of the information on the underlying Superior Court docket, which can be found at *United States v. Mwimanzi*, 2022 DVM 973. *See Whiting v. AARP*, 637 F.3d 355, 364

along with one year of probation. *Id.* In February 2024, the court revoked Mwimanzi's probation and imposed the 75-day sentence. *Id.* Mwimanzi alleges that at that time he "had already accrued . . . at least 86 days" of "verifiable time-served credits," and those credits should have satisfied his sentence. ECF No. 26 ¶ 12. Still, Mwimanzi alleges, he was "seized" by U.S. Marshals, "placed . . . in restraints," and "transported . . . to the D.C. Jail." *Id.* ¶ 14. Then, at the D.C. Jail, no official "perform[ed] an immediate verification of [his] release eligibility before initiating the standard custodial intake process." *Id.* ¶ 16. Thus, he was "compelled to undergo the full intake procedure designed for inmates beginning incarceration," which "included being held, processed, ordered to strip naked before officers, and forced to submit to a visual body cavity inspection." *Id.* ¶¶ 17–18. Only after he had completed the intake procedure—lasting "several hours"—was Mwimanzi's "completed-sentence status confirmed" and he was released. *Id.* ¶¶ 20–21.

Mwimanzi initially sued the D.C. Department of Corrections, the U.S. Marshals Service, and the U.S. Department of Justice for violations of the Fifth and Eighth Amendments, as well as under the Federal Tort Claims Act. *See* ECF No. 1 at 2–4. He filed two motions for leave to amend, which the Court granted. First, Mwimanzi merely sought to correct an erroneous date. *See* ECF No. 12 at 1. Then the Department of Corrections moved to dismiss, arguing that it could not be sued in its own name. *See* ECF No. 17. So in Mwimanzi's second amended complaint— the one at issue now—he replaced the Department of Corrections with the District of Columbia and alleges only violations of the Fourth and Fifth Amendments. *See* ECF No. 26. The factual basis for these constitutional violations is the Defendants' alleged failure to conduct "immediate

---

(D.C. Cir. 2011) (permitting judicial notice when ruling on a motion to dismiss); *Veg-Mix, Inc. v. U.S. Dep't of Agric.*, 832 F.2d 601, 607 (D.C. Cir. 1987) (permitting judicial notice of court records).

sentence verification procedures" to account for Mwimanzi's "time-served credits," which led to his "seizure," "overdetention," and "unlawful search." *Id.* ¶¶ 23–40.

Defendants move to dismiss in two separate motions. The District of Columbia argues that constitutional claims against it brought under 42 U.S.C. § 1983 must be dismissed under Federal Rule of Civil Procedure 12(b)(6) because Mwimanzi failed to adequately allege that his injuries were caused by a municipal policy. *See* ECF No. 27 at 6–10 (citing *Monell v. Dep't of Soc. Servs. of New York City*, 436 U.S. 658, 694–695 (1978)). The Marshals Service and the Department of Justice—together, the "Federal Defendants"—argue that the claims against them must be dismissed as well because Mwimanzi lacks a cause of action to sue. *See* ECF No. 33 at 7–10 (citing *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971)).

## II.    Analysis

### A.    Claims Against the District of Columbia Must Be Dismissed Because Mwimanzi Has Not Adequately Alleged a D.C. Municipal Policy

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, the complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When suing a "municipality under section 1983," the factual content pled must contain both a "predicate constitutional violation and that a custom or policy of the municipality caused the violation." *Blue v. District of Columbia*, 811 F.3d 14, 18 (D.C. Cir. 2015) (cleaned up). In other words, "D.C. is not liable under § 1983 for injuries 'inflicted solely by its employees or agents'"; instead, "a city policy or practice" must have "cause[d] an injury." *Givens v. Bowser*, 111 F.4th 117, 122 (D.C. Cir. 2024) (quoting *Monell*, 436 U.S. at 694).

A plaintiff can adequately plead a municipal policy in one of four ways: by identifying "(1)

3

an official policy explicitly adopted by D.C., (2) actions by a D.C. policymaker with final decision-making authority, (3) repeated behavior by D.C. municipal employees that have reached the level of a custom, or (4) a failure to act by D.C. that shows deliberate indifference to the potential for such violations." *Givens*, 111 F.4th at 122. In addition to "plead[ing] facts that plausibly support one of those four types of municipal policies," a plaintiff must plead "the elements" of that type. *Id.* And which type the plaintiff is pleading should be relatively clear; it is "not [the Court's] role" to "try to surmise which theory of municipal liability has the strongest support in the complaint." *Id.* (quoting *Blue*, 811 F.3d at 20).

Mwimanzi's barebones second amended complaint does not adequately plead a District of Columbia municipal policy. While the complaint includes many factual allegations about how Mwimanzi was treated, it contains essentially no factual allegations that show that his treatment was caused by such a policy. Mwimanzi alleges that the failure to immediately verify his time-served credits and the resulting "constitutional violations suffered" were not on account of "a mere clerical error but the result of systemic failures and unconstitutional policies" from the District. ECF No. 26 ¶¶ 22, 28. He identifies three such policies: a "Policy/Custom" of "Fail[ing] to implement procedures that mandate immediate verification of release eligibility," a "Policy/Custom" of "Uniform[ly] appl[ying] of invasive intake procedures, to all individuals, irrespective of their release eligibility," and a "Policy/Custom" of "Fail[ing] to adequately train and supervise [Department of Corrections] personnel regarding the prompt identification and release of individuals with completed sentences." *Id.* ¶ 22.

But Mwimanzi pleads no facts to support these conclusory allegations. Put differently, the only allegations in the second amended complaint relating to any District of Columbia custom or policy are those that merely assert that such policies exist. Thus, these conclusory allegations are

4

not "plausibly support[ed]" by facts because Mwimanzi alleges no facts. *Givens*, 111 F.4th at 122.

And the complaint also fails to allege "the elements" of any of the four ways of establishing a

municipal policy. *Id.* In other words, Mwimanzi has not alleged that the District "explicitly

adopted" such policies; he does not allege that he was subject to actions taken by a "D.C. policy-

maker with final decision-making authority"; he does not allege other incidents that would allow

the Court to find that his experience was part of "repeated behavior by D.C. municipal employees";

and he does not allege any facts suggesting "deliberate indifference" from the District. *Id.* Apart

from his own experience, Mwimanzi has proffered "mere conclusory statements." *Iqbal*, 556 U.S.

at 678. Those "do not suffice" to state a plausible claim under these circumstances. *Id.* Thus, the

Court will dismiss Mwimanzi's claims against the District.[2]

### B. Claims Against the Federal Defendants Must Be Dismissed Because They Are Barred by Sovereign Immunity

Mwimanzi's claims against the Federal Defendants must also be dismissed, as they are

barred by sovereign immunity. Whether the Federal Defendants have raised sovereign immunity

---

[2] Moreover, even if Mwimanzi had adequately alleged that the District of Columbia had a policy of subjecting persons transported to the D.C. Jail from D.C. Superior Court to serve a sentence of incarceration to the Jail's standard intake process before verifying their eligibility for immediate release, the Court is skeptical that he would have alleged that such a policy was "the moving force behind [a] violation" of his federal rights. *Frederick Douglass Found., Inc. v. District of Columbia*, 82 F.4th 1122, 1136 (D.C. Cir. 2023) (cleaned up). Thus, he would have failed to state a claim for another reason. Mwimanzi does not allege that the judge in his case had determined that he should be released—for example, he was not sentenced to time served—even though, upon the D.C. Jail staff calculating his time-served credits, it turned out that he was eligible for such. ECF No. 26 ¶¶ 22, 28. To the contrary, the judge revoked his probation and imposed a sentence of 75 days. Thus, Mwimanzi does not allege facts suggesting that District of Columbia officials had any obvious way to know, immediately upon his arrival at the D.C. Jail, that he was entitled to release. Under these circumstances, the Court is skeptical that subjecting him to the "standard custodial intake process" which only lasted "for several hours" could violate his Fourth or Fifth Amendment rights, especially given that the law does not "require[] [an] individualized, reasonable suspicion before strip searching a person entering a detention facility." *Bame v. Dillard*, 637 F.3d 380, 386 (D.C. Cir. 2011).

on their own accord here is murky: although their motion to dismiss contains boilerplate sovereign immunity language that cites Rule 12(b)(1), the rest of the motion focuses on Mwimanzi's alleged failure to state a claim. *Compare* ECF No. 33 at 5–7, *with id.* at 7–10 (no *Bivens* cause of action); *id.* at 11 (barred by quasi-judicial immunity); *id.* (no § 1983 cause of action); *id.* (failure to allege causation).

No matter. "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). And when a claim is barred by sovereign immunity, that immunity at the very least "depriv[es] the court of subject-matter jurisdiction." *Brownback v. King*, 592 U.S. 209, 218 (2021). Thus, the Court must raise the issue of sovereign immunity sua sponte and address it before reaching the merits. *See Steel Co. v. Citizens for a Better Env.*, 523 U.S. 83, 93 (1998). Even if Federal Defendants did not raise the matter, "[i]t has been long settled that officers of the United States possess no power through their actions to waive an immunity of the United States or to confer jurisdiction on a court in the absence of some express provision by Congress." *United States v. N.Y. Rayon Importing Co.*, 329 U.S. 654, 660 (1947); *accord United States v. Mitchell*, 463 U.S. 206, 215–16 (1983).

Here, Mwimanzi has sued two federal agencies for constitutional violations. But "[a]bsent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). So the burden of identifying an act of Congress that waives sovereign immunity for his claims against the Federal Defendants for money damages "rests upon" Mwimanzi as "the party asserting jurisdiction." *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Mwimanzi says that he has identified one: the implied constitutional cause of action the Supreme Court recognized in *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971). *See* ECF No. 26 ¶¶ 1,40; ECF No. 35 at 1–2. The parties briefing focuses

6

on whether permitting a *Bivens* claim here would impermissibly extend that cause of action to a new context.  But *Bivens* is not a waiver of sovereign immunity.  *Meyer*, 510 U.S. at 484.  So nothing about *Bivens* solves Mwimanzi's jurisdictional problem.  And in any event, *Bivens* claims cannot be brought against federal agencies—only federal officers.  *Id.* at 484–85.

Thus, the Federal Defendants are shielded from suit by sovereign immunity, and the Court must dismiss the claims against them for lack of subject matter jurisdiction.

## III.    Conclusion

For all the above reasons, the Court will grant the District of Columbia's motion to dismiss the claims against it, dismiss the claims against the Federal Defendants for lack of subject matter jurisdiction sua sponte, and dismiss the case.  And it will deny the Federal Defendants' motion to dismiss as moot.  A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: March 6, 2026

7